**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SARFARAZ MOHAMMED, | No.  1:25-CV-01761-TLN-DMC-HC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| RON MURRAY et. al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding with retained counsel, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 8, and Petitioner's reply, ECF No. 9. Also pending before the Court is Petitioner's motion to set hearing or issue ruling, ECF No. 11.

As a preliminary matter, the Court accepts Respondents' answer, filed December 29, 2025, as timely. On December 26, 2025, Petitioner filed a response stating that Respondents missed the deadline for filing a response and requesting this Court therefore grant the petition. See ECF No. 6. As Respondents note, ECF No. 8, pg. 1, n. 1., the deadline for Respondents' answer, fell on a federal holiday just before the weekend. In accordance with Rule 6 (a)(1), the deadline therefore ran until the end of Monday, December 29, 2026. See Fed. R. Civ. Pro. 6 (a)(1). Given Respondents filed the answer that day, such filing was timely.

1

Additionally, in light of these findings and recommendations, Petitioner's motion to set hearing or issue ruling, ECF No. 11, is moot and the undersigned will accordingly recommend such motion be denied as moot.

## I. BACKGROUND

Generally, Petitioner argues his detention violates due process and the Administrative Procedures Act. See ECF No. 1. Respondents contend that the petition should be denied because Petitioner's detention is mandatory and Petitioner is ineligible for a redetermination of custody. See ECF No. 8.

### A.    Petition for Writ of Habeas Corpus

Petitioner asserts that he entered the United States and then, on or around July 5, 2024, "federal agents briefly detained him, determined that he was not a flight risk or danger to the community, and released him on his own recognizance with a notice to appear for removal proceedings in immigration court." ECF No. 1, pg. 1. Petitioner contends that since his release, he has complied with the obligations imposed by the government, including filing his asylum application, filing pleadings, and regularly checking-in with U.S. Immigration and Customs Enforcement (ICE). See id. at 1-2. Petitioner contends that on November 4, 2025, Petitioner was told by an ICE agent to report to ICE Enforcement and Removal Operations in Stockton, California, on November 8, 2025. See id. at 2. According to Petitioner, he followed the directive and went to the office with his father who waited for Petitioner until Petitioner's family was informed that Petitioner was detained. See id.

Petitioner contends that his detention is harming Petitioner as he "has been torn away from his sister, father and his community." Id. at 3. Petitioner argues that his detention is "part of the Trump Administration's sweeping and unprecedented campaign to re-arrest and re-detain noncitizens living in the community." Id. at 2. According to Petitioner, for decades federal immigration officials have followed a policy of not re-arresting and re-detaining individuals previously released from custody, absent a change in circumstances. See id. (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). Petitioner contends such practice also "conforms with the

2

Fourth Amendment's prohibition on repeated seizures based on the same probable cause without a material change in circumstances." Id. Petitioner asserts that in May 2025, the government began "an aggressive new campaign targeting noncitizens living in the community for re-arrest and re-detention." Id. at 3.

Petitioner argues that his re-arrest and re-detention violates his due process rights in violation of Zadvydas v. Davis, 533 U.S. 678, 695 (2001) as Petitioner was already released from custody after the government determined that Petitioner was not a flight risk nor danger to his community. See id. at 8-9. Petitioner contends that because he is not a flight risk or danger to the community, his detention "is punitive as it bears no 'reasonable relation' to any legitimate government purpose." Id. at 9 (quoting Zadvydas, 533 U.S. at 690). Further, Petitioner asserts that his re-detention without a pre-deprivation hearing violated due process because Petitioner was provided "no notice, no explanation of the justification of his re-detention, and no opportunity to contest his re-detention before a neutral adjudicator before being taken into custody." Id. at 10. Petitioner contends he has a strong interest in his liberty, he was afforded no procedural protections and therefore, risk of erroneous deprivation is high, and the government "has no legitimate interest in detaining Petitioner without a hearing; bond hearings are conducted as a matter of course in immigration proceedings, and nothing in Petitioner's record suggested that he would abscond or endanger the community before a bond hearing could be carried out." Id. (citing Jorge M.F. v. Wilkinson, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021); Vargas v. Jennings, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020).

Next, Petitioner argues his re-detention violated his Fourth Amendment rights because such detention constituted a repeat arrest on the same 2024 civil charge of violating immigration law, which Petitioner was already released for, without any new intervening cause. See id. at 10-11 (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1196 (N.D. Cal. 2017), aff'd sub nom., Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018)). Petitioner additionally alleges a violation of the Administrative Procedure Act, contending that "the government's policy targeting people by luring them to report to ICE ERO appointments and re-arresting and detaining them on the same probable cause . . . is [] arbitrary and capricious, in violation of 5 U.S.C. §

3

706(2)(A)." Id. at 12. Finally, Petitioner asserts that his current detention "interfere[s] with his ability to access immigration court and participate in his immigration proceedings—including pursuing his applications for asylum, withholding of removal, and relief under the Convention Against Torture." Id. at 13.

Among the relief requested, Petitioner seeks: (1) immediate release from custody; (2) a declaration that Petitioner's arrest and detention violate the Fifth Amendment, Fourth Amendment, and Administrative Procedure Act; (3) a declaration that dismissing Petitioner's Section 240 proceedings would violate Due Process; (4) a declaration that placing Petitioner in expedited removal proceedings violates Due process; (5) that Respondents be enjoined from re-detaining Petitioner unless such re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community; (6) an order that Respondents may not dismiss Petitioner's Section 240 proceedings; (7) an order that Respondents may not place Petitioner in expedited removal proceedings or remove Petitioner except based on a final, executable removal order issued through Section 240 removal proceedings; and (8) reasonable attorneys' fees pursuant to the Equal Access to Justice Act and 28 U.S.C. § 2412. See id. at 13.

**B.      Respondents' Opposition**

Respondents argue that Petitioner is an applicant for admission under 8 U.S.C. § 1225(a)(1) and therefore his detention is mandated. See ECF No. 8, pg. 2. Respondents assert that Petitioner was placed under removal proceedings under 8 U.S.C. § 1229 based off a finding that Petitioner was "inadmissible to the United States pursuant to 8 U.S.C. § 1182(a)(6)(A)(i)." Id. According to Respondents, Petitioner was released on an Order of Release on Recognizance subject to Intensive Supervisions Appearance Program (ISAP). See id. Respondents assert that arriving noncitizens and those present without admission may be removed pursuant to expedited removal proceedings under 8 U.S.C. § 1225(b)(1) or removal proceedings before an immigration judge (IJ) under § 1229(a). See id. at 3.  Respondents contend that Petitioner was subject to § 1229(a) removal proceedings and therefore is "ineligible for a custody redetermination hearing before an IJ" and, in accordance with 1225(b)(2)(A), subject to mandatory detention. Id. at 4.

4

According to Respondents, "the Supreme Court explained that 8 U.S.C. § 1225(b) applies to all applicants for admission, noting that the language of 8 U.S.C. § 1225(b)(2) is 'quite clear' and 'unequivocally mandate[s]' detention." Id. at 5 (quoting Jennings v. Rodriguez, 583 U.S. 281, 300, 303 (2018)). Thus, Respondents argue that because Petitioner is "a noncitizen present without admission" and under § 1229(a) removal proceedings, Petitioner "is therefore subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A) and ineligible for a custody redetermination hearing before an IJ." Id.

Next, Respondents argue that Petitioner's detention does not violate due process because the Ninth Circuit recognizes that the due process afforded to noncitizens must be balanced with "'the government's countervailing interests in immigration enforcement— considerations that do not apply to U.S. citizens.'" Id. at 6 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205-06 (9th Cir. 2022)). Respondents assert that Petitioner's detention is not indefinite because the termination of removal proceedings provide a definite end. See id. (citing Demore v. Kim, 538 U.S. 510, 528-29 (2003)). Respondents argue that applying a multifactor balancing test to determine due process is inappropriate because the Supreme Court has not applied such a test to "numerous cases involving the INA," and therefore the Court should adopt the approach from Keo v. Warden of the Mesa Verde Ice Processing Center, No. 1:24-CV-00919-HBK (HC), 2025 WL 1029392, at *7 (E.D. Cal. Apr. 7, 2025), which addressed a due process claim for an individual detained pursuant to § 1226(c). Id. at 7. Respondents argue, in the alternative, that a multifactor balancing test "would favor Respondents" because Petitioner's private interest is low because his detention is "time-limited," there is no risk of erroneous deprivation because detention is mandatory, and "'the government clearly has a strong interest in preventing noncitizens from remain[ing] in the United States in violation of our law.'" Id. (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022)(internal citation omitted)).

Finally, Respondents argue that Petitioner lacks standing to bring a claim under the Administrative Procedures Act (APA) because such relief is only available when it is the only remedy available, and here, habeas provides an alternative remedy for such relief. See id. at 9-10.

**C.**      **<u>Petitioner's Reply</u>**

First Petitioner notes that this Court ordered Respondents to file an answer including "any and all transcripts or other documents relevant to the determination of the issues presented in the application," ECF No. 4, and Respondents failed to include any such documents. ECF No. 9, pgs. 1-2. Petitioner argues that Petitioner is not subject to detention pursuant to §1225(b)(2)(A) because Petitioner was previously released and had begun living in the United States, and therefore Petitioner's detention is pursuant to §1226(a), which allows for release on conditional parole or bond. See id. at 3. Petitioner contends that his detention violates due process because he was previously found to not be a danger nor a flight risk, "nothing has transpired since to disturb that finding," and that Petitioner was arrested when reporting to ICE as instructed, further demonstrates that Petitioner is not a flight risk. Id. at 5. Petitioner contends that Petitioner "has a viable path toward immigration relief," because he has filed an application for asylum. Id.

Petitioner contends that Petitioner's arrest and re-detention violated due process because Petitioner was not provided a hearing before Petitioner was deprived of his liberty, and "the Supreme Court has repeatedly held that individuals released from custody on bond, parole, or other forms of conditional release have a protected interest in their ongoing liberty." Id. at 6 (citing Morrissey, 408 U.S. at 482). Finally, Petitioner asserts he has standing to bring a claim under the APA because this is the only forum where Petitioner can bring such a challenge. See id.

## II. DISCUSSION

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody, and he was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus as to Petitioner's due process claims and order Petitioner immediately released from Respondents' custody under the same conditions he was released previously.

Given this recommendation, the undersigned finds it is not necessary to consider Petitioner's claims arising from the Fourth Amendment and the APA. Petitioner seeks the following additional relief: (1) a declaration that dismissing Petitioner's Section 240 proceedings

6

would violate Due Process; (2) a declaration that placing Petitioner in expedited removal proceedings violates Due process; (3) an order that Respondents may not dismiss Petitioner's Section 240 proceedings; and (4) an order that Respondents may not place Petitioner in expedited removal proceedings or remove Petitioner except based on a final, executable removal order issued through Section 240 removal proceedings. See ECF No. 1, pg. 13. Petitioner expresses concern over "DHS's new expedited removal scheme" and argues such a policy "violates the agency's own regulations making clear that the government cannot terminate a person's Section 240 proceedings absent a showing that the '[c]ircumstances of the case have changed after the notice to appear was issued.'" Id. at 9 and 12 (quoting 8 C.F.R. § 239.2(a)(7), (c) and citing United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954)). However, Petitioner makes no arguments or representations that Petitioner's Section 240 proceedings have been dismissed, nor that Petitioner is at risk of being placed in expedited removal proceedings. Thus, the undersigned does not find Petitioner established such relief is warranted here.

Petitioner additionally seeks attorney's fees but makes no argument to support this claim for relief. Accordingly, such issue may be raised in a separate motion if Petitioner seeks to recover attorneys' fees.

### A.      Petitioner's Re-Detention

In the factual background section, Respondents state that Petitioner was re-detained "due to violations of the Alternative to Detention ('ATD') Intensive Supervisions Appearance Program ('ISAP'). The ISAP required Petitioner to complete 'self-report check-ins' from within his 'zone,' i.e., from his home. However, Petitioner completed multiple check-ins between February and June of this year from outside his home." ECF No. 8, pg. 2. Despite this statement, Respondents make no legal argument that Petitioner was properly re-detained for violating the terms of his release. Additionally, Respondents failed to attach any documentation regarding the requirements of Petitioner's release and the statement provided is too vague for the Court to consider. Respondents state that check-ins must happen within the "zone," which Respondents placed in quotation marks, without providing a citation nor documentation to show where this term originated. Even more vague, Respondents provide a definition of "zone" as "i.e.,

7

from his home," which is not in quotation marks, making the source of the definition unclear. Additionally, Respondents provide no information on why, if Petitioner failed to comply with requirements in February and June, and such failure made re-detention proper, Respondents waited until November to detain Petitioner. Further, as stated by Petitioner and supported by a declaration by Petitioner's sister, Petitioner was re-detained when he reported to ICE after being instructed to do so, indicating Petitioner's compliance with the terms of his release. See ECF Nos. 9, pg. 5 and 6-1, pg. 2.

Absent documentation from Respondents, despite a clear Court Order to provide necessary documents, ECF No. 4, pg. 2, and absent any legal argument that Petitioner violated terms of his release therefore justifying re-detention, the Court cannot consider whether there was a violation nor whether such violation gave rise to lawful re-detention. The Court can only consider the arguments and information properly argued by parties. Further, even if Petitioner did violate terms of his detention, due process would mandate notice and a hearing to inform Petitioner of this violation, which, as Respondents concede, did not occur here. Indeed, this lack of clarify as to whether Petitioner violated the terms of his release underscores the necessity of ensuring due process when adjudicating such an allegation.

**B.      Due Process**

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989);

Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

### 1.    Liberty Interest

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

As a preliminary matter, the Court finds Respondents' argument that Petitioner cannot assert a liberty interest because he is an "applicant for admission" under § 1225 and therefore subject to mandatory detention, ineligible for release, parole, or a custody redetermination hearing is unpersuasive. Courts have concluded "[f]or [§1225] to apply, several conditions must be met — in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted." Martinez v. Hyde, No. CV 25-11613- BEM, 2025

WL 2084238, at *2 (D. Mass. July 24, 2025).

First, there is no evidence in the record that an immigration officer made the requisite determinations for § 1225 to apply or that Petitioner is seeking admission and not clearly and beyond a doubt entitled to be admitted. Following and adopting the reasoning of other courts, this Court finds Petitioner is not actively seeking lawful entry because he already entered the United States over a year ago. See Salcedo Aceros, 2025 WL 2637503, at *8 (collecting cases concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country.).

Further, Respondents' proposed interpretation of the statute disregards the relationship between §§ 1225 and 1226 and would render the recent amendment to § 1226(c) superfluous. Lepe v. Andrews, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025). Specifically, and as many courts have discussed in length, if every "applicant for admission" is subject to mandatory detention under § 1225, there would have been no need for § 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United States without being admitted or paroled" and who has been "charged with, arrested for, or admits to" committing certain crimes. 8 U.S.C. § 1226(c)(1)(E); Maldonado v. Olson, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug 19, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Indeed, prior to a July 2025 memorandum changing its' policy, the government consistently applied Section 1226(a), not Section 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal. See Rodriguez Diaz, 53 F.4th at 1196. This Court agrees with and joins the majority of courts nationwide, including the Eastern District of California, in rejecting Respondents' interpretation of Sections 1225 and 1226. See Rodriguez Vazquez v. Bostock, 2025 WL 2782499, at *1, 21-22 (W.D. Wash. Sept. 30, 2025) (concluding, after a thorough analysis, that "the government's [interpretation of § 1225] belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice"); J.Y.L.C. v. Bostock, 2025 WL 3169865, at *2 (D. Or. Nov. 12,

10

2025) (collecting more than thirty cases rejecting the government's assertion that § 1225 empowers the DHS to arrest and hold a noncitizen present without legal status who has spent years in the U.S.); Cardona-Lozano v. Noem, 2025 WL 3218244, at *6 (W.D. Tex. Nov. 14, 2025) ("Repeatedly, [district courts across the country] have found that DHS and the [Board of Immigration Appeals'] construction of the INA is incorrect and that petitioners who have long resided in the United States but are being held under § 1225 are entitled to relief.") (collecting cases); Faizyan v. Casey, 2025 WL 3208844, at *5 (S.D. Cal. Nov. 17, 2025) (holding that § 1226 applies to a petitioner who "DHS has consistently treated" as subject to discretionary detention and "who has been residing in the United States for two years" (internal quotation marks and citation omitted)); Josue I.C.A. v. Lyons, 2025 WL 3496432, at *3 n.6 (E.D. Cal. Dec. 5, 2025) (collecting cases); Morales-Flores v. Lyons, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (collecting cases) ("Courts nationwide, including this one, have overwhelmingly rejected respondents' arguments and found DHS's new policy unlawful.").

Finally, Respondents never explain how and why, if Petitioner's detention is mandatory and he is ineligible for a custody redetermination, Petitioner was previously released after being taken into custody, which would have presumably required a custody redetermination. Respondent's claim that Petitioner's detention is mandatory and ineligible for a custody redetermination is inconsistent with the record. For these reasons, this Court rejects the government's contention that Petitioner is an "applicant for admission" subject to § 1225(b)(2) and finds that Petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because Petitioner has resided in this country for over a year since Petitioner was released into the United States on parole, until Petitioner was arrested and detained on November 8, 2025 after he reported to ICE. Petitioner's re-detention on November 8, 2025 was not untaken upon Petitioner's arrival to the United States.

As to whether there exists a protected liberty interest, the Court finds Petitioner has a liberty interest as he has developed "enduring attachments of normal life" as described in Morrissey, 409 U.S. at 482. In the year following his release, Petitioner has established a life in California with his family, which includes his sister, a U.S. Citizen, father, a lawful permanent

11

resident, mother, a U.S. citizen, and spouse, who is also a U.S. Citizen.

Moreover, Petitioner was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in circumstances. Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has established his liberty interest in his continued release.

### B.    Procedural Due Process

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors[1]: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over a year and has built a life

---

[1]    Respondents argue that applying a multifactor balancing test to determine due process is inappropriate and the Court should adopt the approach from Keo v. Warden of the Mesa Verde Ice Processing Center, No. 1:24-CV-00919-HBK (HC), 2025 WL 1029392, at *7 (E.D. Cal. Apr. 7, 2025). However, Keo addressed a due process claim for an individual detained pursuant to a different section of the INA than Petitioner. Additionally, the Court there considered whether "continued detention serves the purported immigration purpose and has a definite termination point . . .," and here, Respondents fail to provide the purported immigration purpose of re-detaining Petitioner, given it was previously determined that Petitioner posed no danger nor flight risk. Even if the Court were to decide the Keo approach should be applied here, the undersigned could not find that Petitioner's re-detention is serving its' purported purpose absent Respondents providing a purported purpose. In accordance with other Judges in the Eastern District, the undersigned will apply the balancing test. See Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025); Sukhchain S. v. Wofford, No. 1:25-cv-01863-TLN-DMC, 2025 LX 537135 (E.D. Cal. Dec. 22, 2025).

12

outside of detention. Despite that, Petitioner has now been detained for almost three months without being afforded a hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023). Respondents do not contend that Petitioner is or was a flight risk or a danger to the community. Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Respondents argue the government interest is "in preventing noncitizens from remain[ing] in the United States in violation of our law.'" ECF No. 8, pg. 9 (quoting Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022)(internal citation omitted)). This Court disagrees. While the government has an interest in enforcing immigration laws, Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts

13

are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process"). In addition, the government's interest is even lower because Petitioner was previously released after immigration officials determined he was not a flight risk or danger to the community, and there is no evidence that he has a criminal record.

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Thus, the undersigned finds Petitioner is entitled to relief as to his due process claims and will recommend granting Petitioner's petition for writ of habeas corpus.

/ / /

/ / /

/ / /

/ / /

14

## III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.    It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as to Petitioner's claims that his re-detention violate due process;

2.    It is RECOMMENDED that Petitioner Sarfaraz Mohammed be RELEASED IMMEDIATELY from Respondents' custody under the same conditions he was released previously;

3.    It is RECOMMENDED that Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present; and

4.    It is RECOMMENDED that Petitioner's motion to set hearing or issue ruling, ECF No. 11, be DENIED AS MOOT.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 15, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

15